Arnold **GUAJARDO**, Appellant (Defendant Below),

v.

**STATE of Indiana, Appellee** (Plaintiff Below).

No. 1184S454.

Supreme Court of Indiana.

Sept. 4, 1986.

James V. Tsoutsouris, Porter County Public Defender, James A. Johnson, Deputy Public Defender, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Arnold Guajardo was convicted after a jury trial of rape, a class B felony, Ind. Code § 35–42–4–1 (Burns 1985 Repl.), and criminal confinement, a class D felony, Ind. Code § 35–42–3–3 (Burns 1985 Repl.). He was sentenced to prison for 14 years for the rape and four years for the confinement. Guajardo's sentence was enhanced by 30 years after the jury's finding that he was an habitual criminal, Ind. Code § 35–50–2–8 (Burns 1985 Repl.).

In this direct appeal, Guajardo raises five issues:

1) Whether the trial court erred in admitting into evidence a search warrant and probable cause affidavit within the jury's presence;

2) Whether the trial court improperly admitted evidence seized pursuant to an allegedly defective search warrant;

3) Whether the trial court erred in admitting evidence of one of appellant's prior convictions during the habitual proceedings;

4) Sufficiency of evidence of rape and criminal confinement; and

5) Sufficiency of habitual offender evidence.

The facts most favorable to the jury's verdict show that Guajardo abducted T.K. as she was riding her bicycle near her home in Portage on the morning of June 19, 1983. Defendant drove the 10-year-old girl to a secluded area. He attempted to have intercourse with T.K. several times as she struggled. He put his finger in her vagina, struck her in the face several times and forced her to perform fellatio. He finally succeeded in penetrating T.K. He allowed T.K. to dress and then drove her back to her neighborhood.

T.K. saw a friend as she walked home. T.K. said she had been raped. T.K.'s parents called police and took her to the hospital to be examined. The examination showed that her pubic area was red, swollen and bruised and that her vagina had been forceably penetrated. The police tested the clothes which T.K. was wearing at the time of the attack and found traces of semen, hair and rug fibers.

T.K. helped police prepare a composite photo of the rape suspect. She also accompanied police to a car lot where she identified a 1976 International Scout as the model of her assailant's vehicle. She and the officers toured the area, looking for similar vehicles. After locating several, they discovered a 1976 International Scout owned by Guajardo parked outside his girlfriend's apartment. After looking through the window of Guajardo's vehicle and recognizing several of the items within, T.K. identified the vehicle as that of her assailant. Later

that day, police obtained and executed a warrant to search Guajardo's vehicle. Human and animal hair found on T.K.'s clothing matched hair found within the vehicle and on items seized from it. Furthermore, head hair matching T.K.'s was found on the items seized from the vehicle. After the search, T.K. identified Guajardo from a photographic array.

## I. Admission of Search Warrant and Supporting Affidavit

Guajardo alleged the vehicle search was illegal and filed a motion to suppress all evidence obtained from it. The trial court took the motion under advisement until the prosecution attempted to introduce the fruits of the search during trial. The trial court then excused the jury and conducted a hearing on the motion. In response to Guajardo's arguments, the prosecution offered the search warrant, including the probable cause affidavit, to prove the search was legal and the evidence was admissible. The trial court denied the motion to suppress and thereafter admitted the search warrant into evidence within the presence of the jury. The jurors individually reviewed the warrant later in the trial.

■ Guajardo claims on appeal that the warrant should not have been shown to the jury because the affidavit contained hearsay and prejudicial statements. Hearsay is an out-of-court statement offered in court to prove the truth of the facts asserted therein and thus resting for its value on the credibility of an out-of-court declarant. *Patterson v. State* (1975), Ind., 263 Ind. 55, 324 N.E.2d 482.

■ The affidavit contained information collected from T.K. and several other people during the rape investigation. Two of the people quoted within the affidavit were available for cross-examination at trial, so their statements were not inadmissible hearsay. *Id.; Bundy v. State* (1981), Ind., 427 N.E.2d 1077.

■ The only person quoted in the affidavit who did not testify at trial was Audrey Fronek. According to the affidavit, Fronek told police that she saw a vehicle similar to Guajardo's traveling through T.K.'s neighborhood on the morning of the rape. Fronek's statements to police were clearly hearsay.

■ Notwithstanding the hearsay, the State was obligated to introduce the search warrant and probable cause affidavit into evidence after Guajardo challenged the adequacy of the warrant. *Brandon v. State* (1979), 272 Ind. 92, 396 N.E.2d 365. However, the probable cause affidavit and search warrant should have been presented only to the trial judge because they have no bearing on any issue before the jury. These documents pertain only to the admissibility of evidence obtained under the warrant and that determination is a matter for the court, not the jury. *Clark v. State* (1978), 177 Ind.App. 376, 379 N.E.2d 987. "Whenever the admissibility of evidence secured under a search warrant is challenged, the issue is presented before the trial court outside the jury's presence. There is no reason for the trier of fact to view the probable cause affidavit or search warrant, particularly since these documents often contain statements highly prejudicial to the defendant." *Id.*, 177 Ind. App. at 378–379, 379 N.E.2d at 988–989.

■ Failure to keep the warrant and affidavit from jury view is not reversible error per se; a showing of prejudice is required. *Id.* Despite the hearsay problem, Fronek's comments were not so prejudicial as to require reversal. While Fronek merely sighted a car similar to Guajardo's in the area of the abduction, T.K. unequivocally identified Guajardo as her assailant and testified that his car was the vehicle in which she was raped. In light of the strong identification testimony, the presence of Fronek's comments in the probable cause affidavit was merely cumulative and constituted only harmless error.

## II. Adequacy of the Search Warrant

Guajardo also claims that the court improperly admitted evidence seized under the search warrant. He claims the warrant was defective and, therefore, any evidence

seized under its authority should have been excluded. *Nash v. State* (1982), Ind.App., 433 N.E.2d 807.

█ Guajardo alleges that the probable cause affidavit could not support a warrant because it was defective in two respects. First, Guajardo alleges the affidavit did not identify his vehicle as the one used by the rapist. He notes that the affidavit did not describe the exterior of the vehicle. The affidavit quotes T.K. as describing the seats as black when they were a combination of brown and black. Guajardo also notes that the affidavit failed to state that he does not fit T.K.'s original description of her attacker. Therefore, Guajardo claims that the officer's statement in the affidavit that "we located the herein described vehicle" was merely his conclusion because the other information within the affidavit does not support the proposition that Guajardo's vehicle was used for the rape. Attestations contained in a probable cause affidavit for a search warrant must be based upon fact and not merely be conclusions of the affiant or a witness. *Short v. State* (1982), Ind., 443 N.E.2d 298.

█ While the affidavit did not recount T.K.'s description of the outside of the assailant's vehicle, it did include T.K.'s detailed portrayal of the vehicle's interior: a black bench-type front seat; the front seat was split so that the driver's side portion was smaller than the passenger side; that a multi-colored blanket, with red the prominent color, covered the portion of the front seat where one would seat (sic); there was no back seat in the vehicle; there was some type of bed made up in the back, possibly made of folded blankets, and covered by a blue covering; an uncovered spare tire was located in the rear of the vehicle on the driver's side; and there was an automatic selector on the front floorboard.

The affidavit later notes that this description matched Guajardo's "identically." The affidavit adequately described Guajardo's vehicle as that of the rapist. Furthermore, T.K.'s description of her attacker matched Guajardo except as to height and weight. Failure to note this discrepancy in the affidavit did not render it invalid.

█ Guajardo also alleges the probable cause affidavit was defective because it was based on "stale" information. He suggests that the items sought had last been observed eight days prior to the request for the warrant. He argues that there would be a "substantial probability that such items would be removed and otherwise utilized during an eight (8) day period." Appellant ignores the fact that the search warrant was obtained and executed on the same day that T.K. examined and identified the vehicle. She identified the specific items seized during the search by looking through the window of the vehicle. An affidavit based on information only hours old is not defective for staleness. *See, e.g., Sowers v. State* (1981), Ind.App., 416 N.E.2d 466 (probable cause affidavit containing two-day-old information relating to drugs was not stale).

### III. *Admission of Prior Conviction*

During the habitual offender proceedings, the State offered evidence of Guajardo's conviction for robbery in Porter County in 1975. Guajardo had pleaded guilty pursuant to a plea agreement. Guajardo objected, alleging that the conviction was constitutionally infirm because he had not been fully advised of his constitutional rights. The trial court overruled the objection.

█ Guajardo concedes that no collateral attack can be made on an underlying conviction in an habitual offender proceeding when the conviction is "regular on its face." *Stone v. State* (1982), Ind., 437 N.E.2d 76. The sentencing entry reflects that Guajardo was represented by counsel and that the Court found his plea was voluntarily made. Guajardo asserts that is "hardly regular on its face." He argues that a defendant's waiver of constitutional rights cannot be inferred from a silent record, *United States v. Tucker* (1972), 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592, and that such a conviction should not be admit-

ted over the objection of defense counsel, citing *Burgett v. Texas* (1967), 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, and *Toon v. State* (1974), 162 Ind.App. 77, 317 N.E.2d 875.

 The sentencing entry shows that Guajardo was represented by counsel and changed his plea pursuant to plea negotiations. The entry further shows that the judge questioned Guajardo "to ascertain his understanding his rights." After this questioning, the court found "the Defendant's plea of guilty to the charge of Robbery is voluntarily made." We believe the conviction does appear regular on its face, and therefore Guajardo's attack must fail.

### IV. *Sufficiency of the Evidence Concerning Sex Crimes*

Only hours after she was raped, T.K. described her assailant as a man with a dark complexion, possibly a Latin, about 5'10" with a medium to heavy build. Guajardo is 5'5" and about 135 pounds. T.K. described the vehicle as possibly yellow or beige but indicated that she did not get a good view of the vehicle's exterior. As noted above, T.K.'s description of the inside of the rapist's vehicle matched Guajardo's truck, and several of the items which T.K. had stated were in her assailant's vehicle were found in Guajardo's truck. Furthermore, she identified a rusted-out hole in the door of Guajardo's truck through which she stared during the rape. Finally, T.K. identified Guajardo as her assailant both in the courtroom and from a photographic array before trial.

Guajardo argues that the victim's youth made her identification of him and his vehicle inherently improbable. He notes that her original description of her assailant's height and weight did not match Guajardo. He contends T.K.'s testimony is not sufficient to support his conviction.

 T.K. was 12 by the time of trial. The record reflects she gave clear, detailed and responsive testimony. She unequivocally identified Guajardo and his vehicle. The uncorroborated testimony of a victim alone is sufficient to support a conviction for rape and criminal deviate conduct. *Fointno v. State* (1986), Ind., 487 N.E.2d 140. In this case, the jury was also presented with evidence of hair samples taken from T.K., her clothes and Guajardo's vehicle, which corroborated T.K.'s identification. The discrepancies between T.K.'s original description of her assailant and Guajardo's appearance reflected on the weight of T.K.'s testimony. T.K. was only 4'10" at the time of trial; her vision of a larger-than-life assailant does not make her identification of Guajardo inherently incredible. The jury chose to believe T.K., and we find no legitimate reason to disturb that finding.

### V. *Sufficiency of the Habitual Offender Evidence*

The State charged four prior felonies as the basis for the habitual offender charge, the first of which was the 1975 robbery in Porter County. Guajardo claims the robbery conviction cannot by considered because it was unconstitutionally obtained. He does not contest the individual validity of the three remaining convictions. He merely asserts that the three do not constitute "prior unrelated felony convictions" required by Ind. Code § 35-50-2-8. Inasmuch as we have determined that the 1975 conviction was admissible, this sufficiency argument must fail.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.