**Mark METHENE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 34A02–9901–CR–44.**

Court of Appeals of Indiana.

Nov. 30, 1999.

Matthew J. Elkin, Deputy Public Defender, Kokomo, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Mark Methene appeals his conviction of Dealing in Cocaine, a Class A felony, following a jury trial. The trial court sentenced Methene to thirty years imprisonment. The dispositive issue for our review is whether the trial court erred when it denied Methene's motion to suppress evidence found during the search of his residence.[1]

We reverse.

### FACTS AND PROCEDURAL HISTORY

On September 18, 1996, Kokomo Police Officer Douglas Mason sought a warrant to search Methene's residence. The probable cause affidavit submitted to the judge provided in relevant part:

The undersigned, being duly sworn upon his oath says that the following items:

Cocaine or cocaine base, paraphernalia used in the manufacture or distribution of crack cocaine, records, documents, and letters associated with the sale or distribution of crack cocaine, or other controlled substances, and the proceeds of the sale of crack cocaine.

are concealed in or about the following premises located at:

1317 North Purdum Street, Kokomo, situated in Howard County, Indiana, and occupied by *Mark Methene and that these said items are related to the offenses of Dealing in Cocaine* in violation of the respective Indiana Code Section 35-48-4-1.

The Affiant is a four year veteran with the Kokomo Police Department currently assigned to narcotics and illegal drug investigations. During the past 52 hours the Affiant met with a confidential and reliable informant re-

---

1. We heard oral argument in the Fayette Circuit Court on November 4, 1999.

garding the above location (1317 North Purdum Street, Kokomo, IN). Under controlled circumstances and under the direction of the Affiant, this informant visited 1317 North Purdum Street. During that visit the informant purchased a quantity of white rock-like substance which was reported by Mr. Methene to be crack cocaine. The informant gave Mr. Methene one hundred dollars ($100.00) in U.S. currency during this transaction. The informant has purchased crack cocaine in the past and is familiar with the appearance and packaging of crack cocaine.

The informant has personal knowledge that the occupant of 1317 North Purdum Street (Mark Methene) does keep crack cocaine inside the house.

Prior to obtaining this information the Kokomo Police Department has received numerous complaints from concerned citizens regarding the possibility of illegal drug trafficking occurring at 1317 North Purdum Street. Many of these complaints indicated that there was a frequent flow of traffic to and from this residence whereby the visitors would only remain at the residence for a very brief period of time before leaving. The Kokomo Police Department has conducted surveillance of this residence in the past and confirmed that there was an unusual flow of traffic which is indicative of drug trafficking.

Based on this information the Affiant believes that crack cocaine, and paraphernalia related to the use and/or sale of crack cocaine, proceeds from the sale of crack cocaine, and any records or ledgers associated with the sale of illegal drugs, are concealed in or about the residence at 1317 North Purdum Street in Kokomo, Howard County, Indiana.

Record at 111–12. Based entirely on the foregoing affidavit, a search warrant was issued for Methene's residence and police officers of the Howard County Drug Task Force executed the warrant. During the search, the officers found cash, weighing devices, three handguns, and approximately thirty-four grams of cocaine. The State subsequently charged Methene with dealing in cocaine, as a class A felony.

A jury trial commenced on May 19, 1998. During trial, Methene moved to suppress evidence obtained as a result of the search of his residence. The trial court denied his motion. That jury trial ended in a mistrial when the jury was unable to reach a verdict. The trial court then set a new trial date.

Prior to his second jury trial, Methene filed a written motion to suppress evidence found during the search of his residence. Following a hearing, the trial court again denied Methene's motion. During the second jury trial held on December 15, 1998, Methene asserted a continuing objection to the admission of all evidence obtained as a result of the search of his residence. At the conclusion of the trial, the jury found Methene guilty as charged. This appeal ensued.

## DISCUSSION AND DECISION

### Motion to Suppress

■ The sole dispositive issue for our review is whether the trial court erred when it denied Methene's motion to suppress. We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the verdict is considered, we must also consider the uncontested evidence favorable to the defendant. *Fair v. State*, 627 N.E.2d 427, 434 (Ind.1993).

■ The task of the magistrate in deciding whether to issue a search warrant "is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . .

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Figert v. State,* 686 N.E.2d 827, 830 (Ind.1997). "[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination" of probable cause. *Houser v. State,* 678 N.E.2d 95, 99 (Ind.1997). "Reviewing court" includes both the trial court in ruling on a motion to suppress and the appellate court reviewing that decision. *Id.* at 98. "In this review, we consider only the evidence presented to the issuing magistrate and not *post hoc* justifications for the search." *Jaggers v. State,* 687 N.E.2d 180, 182 (Ind.1997). Although we accord great deference to the magistrate's probable cause determination, we review the trial court's ruling on a motion to exclude seized evidence de novo. *Houser,* 678 N.E.2d at 98.

### A.  *Reliability of Hearsay*

█   Methene first contends that the affidavit for probable cause was supported, in part, by the hearsay statements of a confidential informant ("CI") and that the affidavit did not establish the credibility of the CI.[2] Both the United States Supreme Court and the Indiana legislature have set forth requirements to ensure that hearsay used to support a probable cause finding is reliable. *Lloyd v. State,* 677 N.E.2d 71, 73 (Ind.Ct.App.1997), *trans. denied.* The Supreme Court in *Gates* was unequivocal in concluding that uncorroborated hearsay from a source whose credibility is itself unknown cannot support the finding of probable cause to issue a search warrant. *Jaggers,* 687 N.E.2d at 182 (citing *Gates,*

462 U.S. at 227, 103 S.Ct. 2317). The hearsay must exhibit some hallmarks of reliability. *Id.* The *Gates* court indicated that the trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including where (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Id.* "Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay." *Id.*

█   Likewise, Indiana Code Section 35–33–5–2(b) has codified changes in Fourth Amendment doctrine on the use of informants to establish probable cause. *Jaggers,* 687 N.E.2d at 183. That statute provides that an affidavit based on hearsay must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarations of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

IND.CODE § 35–33–5–2. "When seeking either a search or an arrest warrant, the police must follow the warrant statute, which specifies the minimum information necessary to establish probable cause." *Esquerdo v. State,* 640 N.E.2d 1023, 1029 (Ind.1994) (citation and footnote omitted).

In the present case, Officer Mason did not offer any information to the issuing magistrate to establish the CI's reliability under the federal standard or subsection (b)(1) of our warrant statute. There is no

---

**2.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove

the truth of the matter asserted. *See* Ind. Evidence Rule 801(c).

factual basis to support a finding that the CI had given correct information to police in the past or the CI's hearsay that Methene "does keep crack cocaine inside the house." The CI did not predict conduct or activities by Methene that would have corroborated her hearsay statement. Neither the judicial officer who issues the warrant nor the reviewing court can rely on the affiant's representation that an informant is "reliable" without an independent factual basis to support that representation. The affiant's judgment cannot be substituted for that of a neutral and detached magistrate.

Subsection (b)(2) of the warrant statute was also not satisfied because the totality of the circumstances did not corroborate the hearsay. The State argues that the CI's hearsay information was corroborated by the fact that the Kokomo Police Department had received numerous complaints from "concerned citizens" indicating the "possibility" of illegal drug trafficking due to the frequent flow of traffic to and from Methene's residence with visitors remaining at the residence for a very brief period of time before leaving. These complaints also consist of hearsay from sources whose credibility has not been established. As the court in *Gates* noted, "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Gates*, 462 U.S. at 233–34, 103 S.Ct. 2317. However, like an anonymous informant who has no incentive to be truthful because there is no possibility of criminal liability for filing a false police report, here the anonymity of the alleged "concerned citizens" shields from scrutiny any possible ulterior motives. Such a situation "is rife with the potential for pranks and mischief." *Jaggers*, 687 N.E.2d at 182–83. Without more, complaints from unknown citizens about a "possibility" provide no information for a neutral and detached magistrate to assess the credibility of the hearsay source.

The State also maintains that independent police investigation corroborated both the CI's and the concerned citizens' hearsay information. Specifically, Officer Mason averred that the Kokomo Police Department had conducted surveillance of the residence in the past and that there was an "unusual flow of traffic which is indicative of drug trafficking." The affidavit did not disclose what constitutes an "unusual" flow of traffic, when "in the past" the surveillance was conducted or why that activity indicates drug trafficking in this instance. These vague assertions are insufficient to corroborate the reliability of the hearsay information that Methene was dealing drugs from his residence.

### B. *Controlled Buy*

In addition to hearsay information, the affidavit was also supported by the allegation of a controlled buy. Methene cites our opinion in *Flaherty v. State*, 443 N.E.2d 340, 341 (Ind.Ct.App.1982), in which we considered the sufficiency of a probable cause affidavit when there has been a controlled buy. In *Flaherty*, we noted that the reliability requirements of Indiana Code Section 35–33–5–2(b) [3] do not apply where the facts supporting the affidavit involved a controlled buy rather than the hearsay testimony from an informant. *Id.* Specifically, we explained:

'A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. *Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch*

---

3. *Flaherty* considered the predecessor to Indiana Code Section 35–33–5–2(b).

*all entrances to the residence throughout the transaction.'*

*Id.* (quoting *Mills v. State*, 177 Ind.App. 432, 434, 379 N.E.2d 1023, 1026 (1978)). Thus, where the controls are adequate, the affiant's personal observation of a controlled buy may be sufficient as grounds for finding probable cause. *Mills*, 177 Ind. App. at 435, 379 N.E.2d at 1026. Under such circumstances, even where the informant is not reliable, a court may accept the personal observations of the attesting officer as establishing probable cause. *Flaherty*, 443 N.E.2d at 341.

In this case, however, Officer Mason's affidavit presented the issuing magistrate with virtually no factual basis that a controlled buy had occurred. The affidavit failed to indicate that the CI was searched prior to the transaction, removing all personal effects. There is no indication that the CI was again searched for contraband upon her return. Officer Mason states neither that he personally observed the CI enter Methene's residence and return directly nor that the police closely monitored all entrances to the residence throughout the transaction. Here, just as in *Flaherty*, the affiant's failure to set forth any facts to establish that controls were adequate rendered the affidavit alleging a controlled buy insufficient to establish probable cause. *See id.* at 343.

■ Essentially, the State relies on Officer Mason's conclusory statement that the buy was conducted "under controlled circumstances and under the direction of the Affiant." Attestations contained in a probable cause affidavit must be based upon fact and not merely conclusions of the affiant or a witness. *Guajardo v. State*, 496 N.E.2d 1300, 1304 (Ind.1986). The affidavit in the instant case left the magistrate to speculate whether or not controls were adequate to constitute a controlled buy.

■ The law is well-settled that an affidavit for a search warrant must apprise the magistrate of the underlying facts and circumstances which tend to show probable cause exists for the search. *Flaherty*, 443 N.E.2d at 342. This court has also noted "[i]n the administration of justice, it is imperative that judicial officers have complete information when deciding whether there is probable cause to issue a search warrant." *Newby v. State*, 701 N.E.2d 593, 603 (Ind.Ct.App.1998). Thus, it is incumbent upon the affiant to provide a sufficient factual basis to support an independent judicial determination of probable cause by a neutral and detached magistrate. In this case that information was not provided.

### CONCLUSION

■ The evidence and reasonable inferences did not provide a substantial basis for a probable cause determination to support issuance of the warrant. The affidavit established neither the credibility of the CI nor the adequacy of the controlled buy. Because the warrant was unsupported by probable cause, the search of Methene's residence was unlawful. In our de novo review of the trial court's ruling, we conclude that the court erred when it denied Methene's motion to suppress and admitted the evidence seized as a result of the search. Because the error was not harmless, Methene's conviction of dealing in cocaine must be reversed.[4]

Reversed.

BAKER, J., and BAILEY, J., concur.

---

4. Methene also challenges the admissibility of his confession given to police after the search warrant had been executed but prior to his arrest. Because we conclude that the search warrant was invalid, and the confession was the fruit of the tainted search, we need not

address the issue. However, even assuming Methene's confession were independent of the invalid search, the State failed to present evidence outside of the confession sufficient to establish the *corpus delicti* for dealing in cocaine. In order for a confession to be introduced at trial, the State must produce corroborating evidence of the *corpus delicti*. *Hickman v. State*, 654 N.E.2d 278, 283 (Ind. Ct.App.1995). The *corpus delicti* generally includes two elements: evidence that an act occurred and evidence that the act involved some criminality. *Id.* Here, the thirty-four grams of cocaine seized during the search of Methene's residence should have been suppressed and the substance described in the probable cause affidavit was never introduced into evidence. Absent evidence that Methene possessed with intent to deliver some quantity of cocaine, Methene's confession was inadmissible as evidence of the crime.