Danny W. RAMSEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 14A02–0509–CR–912.

Court of Appeals of Indiana.

Sept. 1, 2006.

Transfer Denied Nov. 2, 2006.

494

Dennis R. Majewski, Terre Haute, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Danny Ramsey appeals from his convictions for Dealing in Methamphetamine,[1] a class A felony, Possession of a Narcotic Drug,[2] a class C felony, Maintaining a Common Nuisance,[3] a class D felony, Possession of Marijuana,[4] a class A misdemeanor, and being a Habitual Offender.[5] Specifically, he contends that there was insufficient evidence to support the habitual offender finding, that the habitual offender and aggravating circumstances phases of the trial should not have been combined, that the trial court erred in denying his motion for a mistrial based on prosecutorial misconduct, and that the trial court erred in admitting evidence obtained from controlled buys and during the execution of a search warrant. Finding that the habitual offender finding was well supported by the evidence, that the trial court did not err in combining the hearings, that the prosecutor did not commit misconduct, and that the evidence was properly admitted, we affirm the judgment of the trial court.

## FACTS

Between January and May 2002, Penny Drake knew Ramsey through her then-boyfriend. Drake had been to Ramsey's apartment in Washington and had seen a large amount of methamphetamine openly displayed there. Drake contacted the Daviess County Sheriffs Department and informed the Department that Ramsey was dealing methamphetamine and other illegal drugs. Detective Ron Morgan instructed Drake to continue her normal activities and to arrange a purchase from Ramsey.

On May 1, 2002, Drake arranged a buy with Ramsey. Before purchasing the methamphetamine, Detective Morgan

1. Ind.Code § 35–48–4–1(a)(1).

2. I.C. § 35–48–4–6(a).

3. I.C. § 35–48–4–13(b)(1).

4. I.C. § 35–48–4–8.3(a)(1).

5. Ind.Code § 35–50–2–8.

searched Drake and her residence to ensure that no illegal drugs were present. Detective Morgan found no drugs or other people inside Drake's residence, and he maintained visual surveillance of the house in order to ensure that no one other than Drake and Ramsey were inside. Detective Morgan also placed a transmitter inside the house to hear the conversation between Ramsey and Drake, but he did not record the conversation. After Drake met with Ramsey in her house, she gave Detective Morgan 3.01 grams of methamphetamine that she had just purchased from Ramsey. Drake and Detective Morgan followed similar procedures in making several more buys from Ramsey throughout May 2002. These later conversations were recorded.

During late 2003 and early 2004, Molly Haag often visited Ramsey's residence, and she saw illegal drugs there every time that she visited. On February 18, 2004, Haag drove Ramsey to obtain a handgun that she later observed in a room of Ramsey's home.

The Indiana State Police began a separate investigation of Ramsey after obtaining information from a confidential informant about Ramsey's drug dealing activities. On February 18, 2004, the Indiana State Police executed a search warrant at Ramsey's residence. The police found Ramsey in the home as well as plant material, rolling paper, and cocaine. Ramsey had $1,760.21 on his person. In an upstairs bedroom, the police recovered a baggie corner, which is commonly used for packaging illegal drugs for sale, marijuana cigarettes, foil, and a light bulb. The police also found a handgun, two digital scales, 59.29 grams of methamphetamine under the sink floorboard, 8.12 grams of marijuana, and 82 grams of methamphetamine inside a jacket that Ramsey admitted was his.

On February 20, 2004, the State charged Ramsey with dealing in methamphetamine, possession of a narcotic drug while in possession of a firearm, maintaining a common nuisance, possession of marijuana, and being a habitual offender; all of the charges were based on the evidence obtained from the 2004 arrest. On April 26, 2004, the State charged Ramsey with eight counts of dealing methamphetamine based on evidence obtained from Drake in 2002. On May 17, 2005, Ramsey moved for and was granted the consolidation of the two cases for trial, and the State dismissed a possession of paraphernalia count. Ramsey moved to suppress the warrant obtained by Detective Morgan and all evidence obtained as a result of the warrant from the 2002 events because of staleness and lack of control of the buys. The trial court denied the motion to suppress.

The jury trial was held on May 17–20, 2005. During the trial, Detective Morgan testified that the reasons for his delay in filing the charges were that he wanted to allow time to pass from Drake's last contact with Ramsey, that he was working in Indianapolis from September 2002 through July 2003 on a complex case that took much of his time, and that the Drug Enforcement Agency (DEA) had been investigating Ramsey for possible involvement in a federal drug conspiracy with which Detective Morgan did not want to interfere. Ramsey objected to the DEA statement and requested a mistrial. The trial court sustained the objection, stating, "The jury will be instructed to disregard the answer that was given to that question with regard to those matters. Court will overrule the motion for mistrial." Tr. p. 379.

During the closing statement, the following exchange occurred:

> *State:* I want to address another thing. Molly Haag. I addressed that politely in my first close, and perhaps Mr. Majew-

ski [Ramsey's counsel] didn't hear it, but he keeps referring to her as Molly Haag [pronounced "hag"], and I think that should tell you something about the strength of our case.

*Mr. Majewski:* I object, Your Honor. That's the way I pronounce that name. There's a drug store in Terre Haute that was known as Haag Drugs or Haag Drugs, and it's H–A–A–G, and I pronounced it Haag ["Hag"]. And, any implication that I would defame a witness or make fun of her name is just beyond bounds of propriety, and I ask the jury to be instructed that they are to disregard that.

*The Court:* I don't know that that's necessarily pertinent to what the argument's about here.

Tr. p. 931–32. Ramsey later moved for mistrial, and the trial court denied that motion. The jury ultimately found Ramsey guilty on all counts.

On May 20, 2005, the trial court began the habitual offender/aggravating circumstances phase of the trial. Ramsey objected to the two being combined, but the trial court overruled the objection. The jury found Ramsey to be a habitual offender and found the existence of all four proposed aggravating circumstances. The trial court sentenced Ramsey to an aggregate term of seventy-five years, and Ramsey now appeals.

## DISCUSSION AND DECISION

Ramsey argues that the evidence is insufficient to support the habitual offender finding, that his trial should have been trifurcated, that the prosecutor committed misconduct, and that the trial court erred in denying his motion to suppress. Specifically, Ramsey asserts that there was no evidence that he qualified as a habitual offender, that it is a violation of double jeopardy principles to hold the habitual

offender and aggravating circumstances hearings simultaneously, that the prosecutor made disparaging remarks about defense counsel that unfairly prejudiced the jury, and that the controlled buys were not sufficiently controlled and the evidence was stale

### *I. Sufficiency of the Evidence*

■ Ramsey first argues that the evidence was insufficient to support the habitual offender finding. Specifically, he asserts that there is no evidence that he had previously been convicted of two separate and distinct felonies.

In reviewing a claim of insufficient evidence, we do not reweigh the evidence, but look instead to the evidence favorable to the judgment, along with any inferences reasonably drawn therefrom. We will affirm a judgment that is supported by substantial evidence of probative value. *Tate v. State,* 835 N.E.2d 499, 511–12 (Ind.Ct. App.2005).

Pursuant to Indiana Code section 35–50–2–8(a), a person is a habitual offender if the jury or the court finds that the State has proven beyond a reasonable doubt that the person has accumulated two prior unrelated felony convictions. A person has accumulated two prior unrelated felony convictions only if the second, prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction and the offense for which the State seeks to have the person sentenced as a habitual offender was committed after sentencing for the second prior unrelated felony conviction. Ind.Code § 35–50–2–8(c).

The evidence shows that on October 2, 1990, Ramsey was charged in Arizona with resisting arrest, a class 6 felony, for his actions on September 11, 1990. Ramsey pleaded guilty on November 30, 1990, and he was sentenced to one and one-half

years on December 27, 1990. State's Ex. 53. The evidence also showed that on January 27, 1993, the State of Arizona charged Ramsey with six counts of trafficking in stolen property, a class 3 felony, for acts he committed in May and June of 1991, six and seven months after he was sentenced on the first prior, unrelated felony conviction. On May 2, 1994, Ramsey pleaded guilty to two felony counts, and the trial court sentenced him two seven and one-half years on June 15, 1994. State's Ex. 55. In this case, the State charged Ramsey on February 20, 2004, for conduct occurring in 2002 and 2004, eight and ten years after he was sentenced for the second prior, unrelated felony convictions. Thus, the evidence is sufficient to establish that Ramsey has accumulated two prior, unrelated felonies that qualify him as a habitual offender.

## II. Trifurcation

■ Ramsey next argues that his trial should have been trifurcated. Specifically, he asserts that combining the habitual offender and aggravating circumstances phase into one hearing denied him a fair trial and violated the prohibition against double jeopardy.

■ In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994). The element of harm is not shown by the fact that the defendant was ultimately convicted; rather, it depends on whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.*

The relevant portion of the Fifth Amendment to the United States Constitution states, "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Ramsey does not explain how combining the habitual offender and aggravating circumstances phase put Ramsey twice in jeopardy. Ramsey merely asserts that the habitual offender evidence necessarily affected the jury's decision on the aggravators and that the results of both "quite possibly ... would have been different" if they had been separate. Appellant's Br. p. 17. But Ramsey does not explain how the habitual offender evidence prejudiced him in the eyes of the jury. The jury had already convicted him of multiple felonies at that point, so no presumption of innocence remained to shield him. In short, we cannot see how the combined hearing denied Ramsey the right to a fair trial.

## III. Prosecutorial Misconduct

Ramsey next contends that the prosecutor committed misconduct. Specifically, he asserts that the State elicited improper "uncharged bad act" testimony, failed to reveal that Detective Morgan listened to the conversations as they were transmitted or recorded during the controlled buys, disparaged defense counsel, and commented on the lack of a defense witness to contradict the testimony of the State's witnesses.

■ When reviewing an allegation of prosecutorial misconduct, we make two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct, and, if so, we next determine whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Hall v. State,* 796 N.E.2d 388, 401 (Ind.Ct.App.2003). The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.* The con-

duct of closing argument is within the sound discretion of the trial court. *Nelson v. State,* 792 N.E.2d 588, 591 (Ind.Ct.App. 2003). When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Dumas v. State,* 803 N.E.2d 1113, 1117 (Ind.2004). If the party is not satisfied with the admonishment, then he should move for a mistrial. *Id.*

### A. Uncharged Bad Acts Testimony

 Ramsey alleges that Detective Morgan's testimony regarding the DEA investigation of Ramsey was an evidentiary harpoon. An evidentiary harpoon generally occurs when the prosecution injects inadmissible evidence that prejudices the jury against the defendant and his defense. *See Roberts v. State,* 712 N.E.2d 23, 34 (Ind.Ct.App.1999). In certain circumstances, the injection of an evidentiary harpoon by a prosecutor may constitute prosecutorial misconduct rising to the level of fundamental error and requiring a mistrial. *Id.*

 Indiana Evidence Rule 404(b) states in pertinent part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." In assessing the admissibility of evidence under Indiana Evidence Rule 404(b), the trial court must determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. We apply the same test to determine whether the trial court abused its discre-

tion. *Wilhelmus v. State,* 824 N.E.2d 405, 414 (Ind.Ct.App.2005).

During opening statements, Ramsey's counsel urged the jury to consider the fact that Detective Morgan waited for two years before filing charges in the investigation involving Drake. During direct examination, Detective Morgan testified regarding the reasons for the delay in filing charges by explaining that he had been involved in DEA investigations outside of Daviess County that consumed a significant amount of his time up until a month before the trial in this case. Tr. p. 375–76. The following exchange then occurred:

> State: So, the decision to file this charge doesn't bear on the quality of the evidence?
>
> Detective Morgan: No, has no bearing on that.
>
> State: The decision was it based on any other investigation you were conducting?
>
> Detective Morgan: Shortly after July of 2003, the investigation ended, we still had work to do in that case, but the bulk of it was paperwork after that. Another case was initiated from other members of the task force where cocaine purchases were being made, and the source was here in Washington. And, with the information he gained out of that case, we looked at Mr. Ramsey as possibly being involved in a federal drug conspiracy case.

Tr. p. 376–77. Ramsey objected, arguing that this was hearsay and inadmissible uncharged misconduct and moved for a mistrial. The trial court granted the hearsay objection and admonished the jury to disregard the answer but denied the motion for mistrial.

 Initially, we note that hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted. Ind. Evidence Rule 801(c). Detective Morgan's statement does not discuss an out-of-court statement, nor was it offered to prove the truth of the assertion that the DEA was investigating Ramsey. The State's purpose in asking the question was to rebut Ramsey's argument that the Drake case must be weak because Detective Morgan waited for two years to file the charges. Detective Morgan's response was merely part of the explanation for why the charges were not filed until 2004. Furthermore, a trial court's admonishment, like the one the trial court gave after this testimony, is presumed to correct any error. *Lehman v. State*, 777 N.E.2d 69, 72 (Ind.Ct.App.2002). Ramsey has not demonstrated that the jury disregarded the admonishment. Thus, this was neither hearsay nor an evidentiary harpoon, and it does not constitute prosecutorial misconduct.

### B. Audio Recording

■ Ramsey next contends that it was prosecutorial misconduct for the State not to reveal to Ramsey that Detective Morgan "monitored in any way the alleged conversations between Ramsey and the confidential informant [Drake]." Appellant's Br. p. 25. Ramsey again contends that this was an evidentiary harpoon because Ramsey's defense strategy was to argue that the jury would have to decide whether Ramsey or Drake was more credible, and the State therefore failed in its duty to provide him with information prior to trial about the evidence and witnesses against him. But Ramsey's counsel admitted that the State gave him all of the tapes of the recorded conversations between Drake and Ramsey that were in the State's possession. Tr. p. 413. The tapes were introduced into evidence and played for the jury, and they could decide for themselves the import of Detective Mor-

gan's testimony with relation to the tapes. Ramsey cannot demonstrate that the fact that Detective Morgan also listened to the tapes in any way prejudiced him or that knowing that fact earlier would have provided him with exculpatory information. We find no prosecutorial misconduct in this argument.

### C. Disparaging Comment about Defense Counsel

■ Ramsey next argues that the prosecutor committed misconduct by making disparaging remarks about defense counsel during the closing argument. The comment at issue is about the correct pronunciation of Molly Haag's name. Defense counsel pronounced her last name, "Hag," and the State—and apparently Haag herself—pronounced it "Hague." In the rebuttal closing, the State said, "I addressed that politely in my first close, and perhaps Mr. Majewski [Ramsey's counsel] didn't hear it, but he keeps referring to her as Molly Haag ["Hag"], and I think that should tell you something about the strength of our case." Tr. p. 931. Ramsey immediately objected to the State's implication that he would "defame a witness or make fun or her name." Tr. p. 932. Ramsey's counsel later moved for a mistrial, which the trial court denied.

Taken as a whole, we find the State's comment to be comparable to the comment made in *Donnegan v. State*, 809 N.E.2d 966 (Ind.Ct.App.2004), *trans. denied.* In that case, the prosecutor argued that the entire defense was "smoke and mirrors designed to get you to take your eye off the ball and miss what's important and focus on something stupid that doesn't matter, has no relevance." *Id.* at 973. The trial court denied the defendant's motion for mistrial but admonished the jury to disregard the comment. On appeal, we upheld the denial of the motion for mistrial

because the prosecutor's remark concerned the quality of Donnegan's defense and was a permissible comment on the evidence. *Id.* at 974.

Similarly, the State's comment here was directed at the quality of Ramsey's defense, not personally at Ramsey's counsel, because the State argued that the strategy of the defense was to attack the State's witnesses because of the strength of the State's case. The State had subtly attempted to correct the pronunciation of Haag's name in the first closing by saying, "You heard Miss Haag, it's pronounced Haag ["Hague"], testify about using drugs in the defendant's house." Tr. p. 905. Furthermore, when the State corrected Ramsey's counsel in rebuttal closing, the State gave counsel the benefit of the doubt by saying, "perhaps Mr. Majewski [Ramsey's counsel] didn't hear" the correction. Tr. p. 931. This was, therefore, a permissible comment on the evidence and not prosecutorial misconduct.

### D. Comment on Lack of Defense Witnesses

■■■ Ramsey's final argument regarding prosecutorial misconduct is that the State improperly commented on the lack of defense witnesses. Ramsey alleges, without citation to authority, that this improperly shifted the burden of proof from the State to the defense.

During closing, Ramsey opened his argument by contending that the State failed to meet its burden of proof because it did not subpoena certain witnesses, saying that those witnesses were "Missing in action, MIA." Tr. p. 917. Ramsey's counsel argued that the State's decision not to subpoena those witnesses indicated that their testimony would not have corroborated the State's witnesses, saying:

> Why don't we have those people? They control the evidence. They have the ability to get people here. You've seen

sheriffs—you've seen sheriff's deputies testify, you've seen state police testify, you've seen experts from the state police department testify, come up all the way from Evansville to testify in this case. They have the power to get anyone they want. But, they chose not to bring these missing people in for you to listen to. And, you have got to wonder why you didn't get the opportunity to hear that.

*Id.* at 921–22. In its closing, the State said, "Here's another complaint. There shouldn't be any gaps. Where's a case? Who says that? Says him. No law on that. Cross it off. Then, he complained about these MIAs, not here, not here, not here, not here. He has the same power as we do . . ." *Id.* at 932. Ramsey then objected, saying, "The defendant has no duty to prove or explain anything. That's the law." *Id.* The trial court said, "We've instructed on that," and the State replied, "I'm simply explaining the subpoena power that he, also, has, Judge." *Id.*

The facts here are strikingly similar to the facts in *Reliford v. State,* in which our Supreme Court addressed this very issue. 436 N.E.2d 313 (Ind.1982). Reliford's counsel claimed in closing argument that the State did not call certain witnesses because they would not identify appellant as the perpetrator of the crime. The State responded by saying:

> Well, if we wanted—if we had to call everyone who knew anything about any minor detail in this case or any other case, we would be here forever. So, both sides can control the case and both sides have subpoena powers and both sides have all the statements and both sides have everything. Everything. We were not trying to hide anything from you; we gave to the Defendant's counsel everything in the case and he has subpoena powers-

*Id.* at 314. Reliford's counsel objected, saying:

> The Defendant doesn't have to prove a darn thing. That's a mis-statement of the law and I want the Jury admonished that—that the correct statement of the law is the Defendant doesn't have to call a single witness and for the prosecutor to stand there and tell this jury that I have the ability or power to put people on the stand, he's intimating that I did not. And I think that that is an improper statement of the law and I think that remark should be stricken from the record and the jury admonished.

*Id.* The trial court overruled the objection and refused to admonish the jury. On appeal, the *Reliford* court found no error where the trial court instructed the jury that the defendant was not required to present any evidence whatsoever and was not required to prove or disprove his innocence. *Id.* at 315.

Similarly, here, the State was explaining the subpoena power given to both parties in the case, and the trial court instructed the jury properly on the burden of proof and the fact that the defense is not required to present any evidence. Appellant's App. p. 133. Therefore, Ramsey must fail on this claim of error.

### IV. Admission of Evidence

■ Finally, Ramsey argues that the trial court erred in admitting evidence obtained during the controlled buys and from a search of his home. Specifically, he asserts that the buys were not sufficiently controlled, that the evidence was stale, and that there was not sufficient evidence to establish that the confidential informant involved in the charges stemming from Ramsey's conduct in 2004 was reliable.

We note that the admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of that discretion. *State v. Lloyd,* 800 N.E.2d 196, 198 (Ind.Ct.App.2003). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. *Id.* As a rule, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. *Coleman v. State,* 694 N.E.2d 269, 277 (Ind.1998). In determining whether an evidentiary ruling affected a party's substantial rights, we assess the probable impact of the evidence on the trier of fact. *Id.*

Ramsey contends that this case is similar to *Methene v. State,* 720 N.E.2d 384 (Ind.Ct.App.1999). In *Methene,* this court reversed the trial court's denial of a motion to suppress evidence obtained through a search warrant that was issued pursuant to information from a confidential informant (CI) who made controlled buys from the defendant. But we find *Methene* to be inapposite because the CI in *Methene* did not testify. Here, both Drake and Detective Morgan testified, and the jury was able to determine for itself whether there were sufficient controls in place during the buys.

Even if this were not the case, there were multiple problems with the controls in *Methene* that are not present here. In *Methene,* the probable cause affidavit failed to indicate that the CI was searched prior to the transaction, removing all personal effects. There was no indication that the CI was again searched for contraband upon her return. The police officer did not state that he personally observed the CI enter Methene's residence and return directly nor that the police closely monitored all entrances to the residence

throughout the transaction. *Id.* at 390. But here, Detective Morgan and Drake testified that he searched her person, personal effects, and residence before and after the buys. Tr. p. 440–41, 501–02; Appellant's App. p. 91. The police monitored the residence to make certain that no one but Drake and Ramsey went in or out. Tr. p. 384. And audio recordings, after the May 1 meeting, were made of the transactions between Drake and Ramsey. State's Ex. 5–8. We find that these controls were sufficient.

■ Ramsey also complains that the information used to establish probable cause in the charges stemming from the controlled buys with Drake was stale because the State did not file charges until two years after the buys occurred. While it is true that stale information cannot support a finding of probable cause, that rule applies to the time from the commission of the crime to the time that the information is presented to a magistrate in order to obtain a search warrant so that the evidence of the conduct is still in the place to be searched. *State v. Haines,* 774 N.E.2d 984, 990 (Ind.Ct.App.2002). The rule does not apply to the timing of the State's decision to file charges. To hold otherwise would be to vitiate statutes of limitations. Therefore, Ramsey's claim that the evidence was stale must fail.

■ Ramsey also asserts that there is not enough evidence that the CI involved in the charges stemming from 2004 conduct was reliable, particularly because "some" but "not all" of the information Officer Dana Miller received in relation to the investigation came from information that the CI received from another unnamed person. Appellant's Br. p. 30.

■ In determining whether probable cause exists to support the issuance of a warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The reviewing court is to focus on whether a "substantial basis" existed for a warrant authorizing the search or seizure, and doubtful cases are to be resolved in favor of upholding the warrant. *Houser v. State,* 678 N.E.2d 95, 98 (Ind. 1997) (citing *Gates,* 462 U.S. at 236–39, 103 S.Ct. 2317). "[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination." *Id.* at 99. A presumption of validity of the search warrant exists, and the burden is on the defendant to overturn that presumption. *Snyder v. State,* 460 N.E.2d 522, 529 (Ind.Ct. App.1984).

■ An affidavit based on hearsay information provided by a CI must either:
(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.
Ind.Code § 35–33–5–2(b). The trustworthiness of hearsay for purposes of probable cause can be established in a number of ways, including, but not limited to, occasions where "(1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily

easily predicted." *Jaggers v. State*, 687 N.E.2d 180, 183 (Ind.1997). Declarations against one's penal interest can furnish sufficient basis for establishing the credibility of a CI. *Houser*, 678 N.E.2d at 100; *Iddings v. State*, 772 N.E.2d 1006, 1013–14 (Ind.Ct.App.2002).

Detective Miller testified that the CI provided statements that were against the CI's penal interests. Tr. p. 66, 73, 81–82. Detective Miller also testified that "[t]he information that is in [the probable cause affidavit] is based upon the CI's own personal knowledge, not anything else from anybody else's knowledge." *Id.* at 76. Detective Miller was also able to corroborate the CI's description of the interior of Ramsey's residence because Detective Miller had previously been inside the residence. *Id.* at 73, 80–81. This is sufficient to establish the CI's credibility.

■ Ramsey also asserts in passing that there is an issue of staleness with regard to the CI, but we find no merit in this contention. Detective Miller testified that she talked with the CI on February 15, 2004, and filed her probable cause affidavit on February 18, 2004. *Id.* at 62–63. Ramsey does not explain how a delay of three days renders the information stale. In short, we find that the trial court did not err in admitting this evidence.

## CONCLUSION

In light of the above conclusions, we find that the evidence was sufficient to support the habitual offender finding and that the trial court did not err in combining the habitual offender and aggravating circumstances phases of the trial. We also find that the prosecutor did not commit misconduct and that the trial court did not err in denying admitting evidence obtained during the controlled buys and from a search of his home.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.