## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 12 2016, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Arnell Lyles,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 12, 2016

Court of Appeals Case No.
49A02-1603-CR-667

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1312-FA-80037

**Bailey, Judge.**

# Case Summary

Arnell Lyles ("Lyles") was convicted after a jury trial of Dealing in Cocaine, as a Class A felony.[1]  He now appeals.

We affirm.

# Issue

Lyles raises a single issue for our review:  whether the trial court's admission of a search warrant, together with related testimony, was fundamental error.

# Facts and Procedural History

On the evening of December 18, 2013, Indianapolis Metropolitan Police Department ("IMPD") detectives, led by Detective Beniam Kumbi ("Detective Kumbi") and assisted by an IMPD SWAT team, executed a no-knock search warrant of a residence in Indianapolis.  Lyles was the only person in the home, which contained little furniture except for a futon, a television, and a small refrigerator in the kitchen.

Police found Lyles in the kitchen.  A search of Lyles's person uncovered $195 in cash, a wallet, keys, a pair of dice, and two cellular phones.  In the kitchen,

---

[1] Ind. Code § 35-48-4-1(b).  Lyle's offense was committed in 2013, prior to the effective date of substantial changes to Indiana's criminal statutes.  We refer throughout to the statutes applicable at the time of Lyle's offense.

police found $295 in cash tucked under the television, nineteen bindles of crack cocaine on the counter, and two more cellular phones. There were no items of paraphernalia typically used to consume cocaine, and Lyles exhibited no outward signs of having used cocaine himself.

[6] Further into their search, the detectives opened the kitchen's small refrigerator. Within it they found some food and a loaded .38 revolver. Opening a kitchen drawer, detectives located a box of bullets of the type that had been loaded into the revolver. Subsequent analysis disclosed that Lyles's fingerprints were on this box.

[7] On December 19, 2013, the State charged Lyles with Dealing in Cocaine and Possession of Cocaine, enhanced to a Class C felony because the alleged offense was committed while Lyles possessed a firearm.[2]

[8] A jury trial was conducted on January 28 and 29, 2016. Shortly before the trial commenced, the State moved to dismiss the enhancement for possession of a firearm, and the trial court granted the State's motion. At the trial's conclusion, the jury found Lyles guilty as charged of Dealing in Cocaine and Possession of Cocaine.

[9] A sentencing hearing was conducted on March 8, 2016. At the conclusion of the hearing, the trial court entered judgment of conviction against Lyles for

---

[2] I.C. § 35-48-4-6(b).

Dealing in Cocaine, and ordered the count of Possession of Cocaine merged. The trial court then sentenced Lyles to twenty-eight years imprisonment, with eight years suspended to probation, twelve years executed in the Indiana Department of Correction, and eight years executed in Community Corrections.

[10] This appeal ensued.

# Discussion and Decision

[11] In his appeal, Lyles contends that the trial court's admission into evidence of the following were fundamental error: the search warrant and Detective Kumbi's testimony that, in issuing the warrant, the judge had credited police statements. Lyles acknowledges that he did not object to admission of these materials at trial.

[12] When a defendant has not objected to the admission of evidence at trial, appellate review is waived unless there has been fundamental error. *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). The fundamental error doctrine is an exception to the general rule of waiver. *Id.* "Hence, the 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* (citations and quotations omitted). For fundamental error to exist, a fair trial must have been impossible or the complained-of error must

constitute a blatant violation of basic and elementary principles of due process. *Id.* Relief on these grounds is available "only in egregious circumstances." *Id.* (quotation omitted).

The Indiana Supreme Court has held that, under most circumstances, a search warrant and its supporting affidavit are inadmissible evidence. In *Guajardo v. State*, the court noted that a probable cause affidavit and search warrant "have no bearing on any issue before the jury" and thus should not have been admitted into evidence. 496 N.E.2d 1300, 1303 (Ind. 1986). The court observed, "There is no reason for the trier of fact to view the probable cause affidavit or search warrant, particularly since these documents often contain statements highly prejudicial to the defendant." *Id.* (quoting *Clark v. State*, 177 Ind. App. 376, 378-79, 379 N.E.2d 987, 988-89 (1978)). However, the *Guajardo* Court nevertheless affirmed the conviction based upon "strong identification testimony" that rendered the error harmless. *Brown v. State*, 746 N.E.2d 63, 67 (Ind. 2001) (citing *Guajardo*, *supra*).

Both this Court and the Indiana Supreme Court have held that even when a search warrant is erroneously admitted into evidence, reversible error arises only when the defendant has been prejudiced. In *Brown*, the Indiana Supreme Court concluded that a claim of prejudice that "consist[ed] entirely of speculation that [Brown] was a victim of guilt by association," was insufficient to establish prejudice when other evidence indicated Brown's motive and presence at the scene of the crime. *Id.* at 68. And in *Jacobs v. State*, this Court observed that prejudicial information is "often"—but not always—included in a

search warrant. *Id.* at 999 (quoting *Guajardo*, 496 N.E.2d at 1303). Thus, we affirmed as harmless error the admission of a search warrant into evidence when 1) the warrant did not mention the defendant or contain allegations or information the jury did not learn by other means, and 2) the defendant did not articulate how the search warrant included information that could have contributed to the verdict. *Id.* at 998-9 (quoting *Guajardo*, 496 N.E.2d at 1303).

[15] Here, Lyles argues that admission into evidence of the search warrant and Detective Kumbi's testimony was highly prejudicial. Lyles observes the search warrant and Detective Kumbi's testimony informed the jury that "a judge had been presented with information about the house … and that the judge had credited police officers' statements about what they expected to find." (Appellant's Br. at 13.) The warrant itself, Lyles notes, indicated that there were individuals trafficking controlled substances at the home, and that the warrant's mention of "pre-recorded buy money" indicated that police had already made a controlled buy at the residence. (Ex. 1.) Finally, Lyles draws our attention to Detective Kumbi's testimony that the warrant was a "no-knock" warrant that was executed with the assistance of a SWAT team because officers suspected there were weapons in the house based upon "prior knowledge" of the home. (Tr. at 56.) Lyles argues that, in a possession case like this one, because the jury would not have had this information without the impermissible admission of the warrant and related testimony, and because this information was not cumulative of other evidence presented at trial, "[t]he deck

was unfairly stacked against [Lyles]," destroying his presumption of innocence. (Appellant's Br. at 15.)

[16] However, there was substantial independent evidence of Lyle's guilt presented at trial. Lyles was the sole occupant of the home when police searched it, and he was in the kitchen where the nineteen pre-tied bindles of cocaine were located, along with two cellular phones and nearly $300 in cash tucked under the microwave. In addition, Lyles had nearly $200 and two other cellular phones on his person. Photographs of Lyles were recovered from two of the phones, as were photographs of a gun that strongly resembled the pistol found in the kitchen refrigerator. The gun in the refrigerator was loaded with .38 caliber ammunition that was of the same type as the ammunition found in a box in a kitchen drawer, and Lyle's fingerprint was recovered from that box. Given this evidence, we cannot conclude that any error in the admission of the search warrant prejudiced Lyles—let alone that such prejudice might arise to the level of a deprivation of Lyles's right to a fair trial necessary to establish fundamental error. We accordingly affirm Lyles's conviction.

[17] Affirmed.

Riley, J., and Barnes, J., concur.