**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Dec 31 2012, 11:05 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHA SEYMOUR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-489 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patricia Gifford, Senior Judge
Cause No. 49G04-1109-FA-68656

**December 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Micha Seymour appeals his conviction for Attempted Murder[1] and his adjudication as a Habitual Offender.[2] Seymour presents the following restated issues for review:

1.     Did the admission of the victim's medical records constitute fundamental error?

2.     Did the State present insufficient evidence to support Seymour's habitual offender adjudication?

We affirm in part, reverse in part, and remand with instructions.

On September 24, 2011, Deandre Hill went to his sister's house and found her fighting with her boyfriend, Seymour. When Hill broke up the altercation, he and Seymour began arguing. Hill and Seymour then went for a short drive to allow them to talk and attempt to resolve their dispute. The men, however, were unable to settle their differences, and Hill drove Seymour back to Hill's sister's house. Before exiting the vehicle, Seymour shook Hill's hand and told him to "keep [his] heat on," meaning that Hill should carry his gun. *Transcript* at 27.

After making sure his sister and her children were alright, Hill got back in his vehicle and ran some errands. About thirty minutes later, Hill went to the corner of Michigan Street and Grant Avenue in Indianapolis, where he often met with his friends. As he drove past an open field near his destination, he saw Seymour standing next to a gold Buick holding a large gun. Hill asked Seymour what he was doing, and Seymour stated that he was waiting for a friend.

---

[1] Ind. Code Ann. § 35-42-1-1 (West, Westlaw current through 2012 2nd Reg. Sess.); Ind. Code Ann. § 35-41-5-1 (West, Westlaw current through 2012 2nd Reg. Sess.).

[2] Ind. Code Ann. § 35-50-2-8 (West, Westlaw current through 2012 2nd Reg. Sess.).

Hill then drove half a block further and, as he began to park his car in an alley, he saw Seymour standing on the passenger side of the vehicle, still holding the gun. After Hill parked his car, Seymour shot him three times, twice in the chest and once in the abdomen. As Seymour continued to shoot at him, Hill drove away, but crashed into a garage. Hill then got out of his car and began running around the garage. Hill finally stopped running when he realized that the gunshots had stopped and that Seymour was no longer chasing him. Hill then went back to the alley and saw Seymour running toward Michigan Street. Hill got in his vehicle and drove a short distance before pulling over and calling 911. Emergency personnel responded to the scene and took Hill to the hospital, where he stayed for about eight days before being released.

As a result of the shooting, the State charged Seymour with attempted murder and alleged that he was a habitual offender. A two-day jury trial commenced on May 14, 2012, at which Hill testified for the State. During Hill's testimony, the State sought to introduce records of Hill's medical treatment following the shooting, along with a certified business record affidavit. Seymour raised no objection, and the records were admitted. The State did not publish the records to the jury at that time, and the records were not mentioned again at any point during the trial. The State eventually published the records at the close of trial when the jury was set to begin its deliberations.

The jury returned a guilty verdict on the attempted murder charge, and the matter proceeded to the habitual offender phase. The State presented evidence that Seymour had committed class C felony carrying a handgun without a license on September 17, 2002, and

that he was sentenced for that offense on November 21, 2002. The State also presented

evidence that Seymour was arrested on an undisclosed warrant charge and for class D felony

resisting law enforcement on February 28, 2010, and that he was sentenced for the resisting

offense on April 1, 2010. The jury determined that Seymour was a habitual offender, and the

trial court sentenced him to forty-five years for attempted murder, enhanced by thirty years

based on the habitual offender finding, for an aggregate sentence of seventy-five years.

Seymour now appeals.

1.

Seymour first argues that the trial court erred in admitting Hill's medical records into

evidence. Seymour concedes, however, that he did not object to the admission of the medical

records at trial. Therefore, unless he can show that fundamental error occurred, the issue is

waived. *See Caron v. State*, 824 N.E.2d 745 (Ind. Ct. App. 2005), *trans. denied*.

> The fundamental error doctrine serves, in extraordinary circumstances, to
> permit appellate consideration of a claim of trial error even though there has
> been a failure to make a proper contemporaneous objection during the course
> of a trial, which failure would ordinarily result in procedural default as to the
> claimed error. The doctrine applies to those errors deemed "so prejudicial to
> the rights of a defendant as to make a fair trial impossible."

*Hardley v. State*, 905 N.E.2d 399, 402 (Ind. 2009) (quoting *Barany v. State*, 658 N.E.2d 60,

64 (Ind. 1995)). Thus, the mere fact that an error occurred and prejudiced the defendant will

not satisfy the fundamental error rule. *Absher v. State*, 866 N.E.2d 350 (Ind. Ct. App. 2007).

"Likewise, it is not enough, in order to invoke this doctrine, to urge that a constitutional right

is implicated." *Id.* at 355.

On appeal, Seymour argues that Hill's medical records were inadmissible for two reasons: (1) they contain hearsay not falling within the business records exception set forth in Ind. Evidence Rule 803(6), and (2) they contain expert medical opinions and diagnoses, and were therefore inadmissible because the State failed to lay the proper foundation under Ind. Evidence Rule 702. Assuming without deciding that Seymour is correct concerning the admissibility of the records, we cannot conclude that he has established fundamental error.

In support of his fundamental error argument, Seymour argues that the records were twenty-four pages long and contained multiple descriptions of Hill's injuries and treatment, and that Seymour did not have the opportunity to cross-examine the medical professionals who prepared the records.[3] The medical records established that Hill had been shot and suffered extensive injuries as a result; they made no reference to the person responsible for the shooting. Hill testified that he was shot three times, and a police officer testified that he responded to the scene and saw Hill's wounds and bullet holes in his vehicle. Other witnesses described the locations of bullets and bullet holes, as well as the bullets' trajectories as they entered the vehicle. Thus, the medical records were cumulative of other evidence that Hill had been shot, and Seymour has not established that the alleged harm resulting from the medical records' repeated description of Hill's injuries was so serious as to make a fair trial impossible.

Moreover, Seymour did not dispute at trial that Hill had been shot; rather, he argued

---

[3] Seymour does not argue that the admission of the medical records violated his Sixth Amendment right to confront and cross-examine witnesses.

5

that someone else was responsible for the shooting. Thus, it is unclear to us how cross-examination of the medical professionals who prepared the records concerning Hill's injuries and diagnoses would have been beneficial to Seymour's defense, and the lost opportunity to cross-examine them certainly did not deprive Seymour of a fair trial. Likewise, to the extent Seymour argues that the records' purportedly graphic descriptions of Hill's injuries and treatment engendered excessive sympathy or outrage in the jury, we note that the records contained no photographs and generally used clinical language to describe Hill's injuries and course of treatment. We therefore conclude that the descriptions fall far short of what would be necessary to support a claim of fundamental error. This is particularly true in light of the fact that the records were mentioned only once during trial, were not read aloud during trial, and were not published to the jury until shortly before it began deliberations. For all of these reasons, Seymour's fundamental error claim is without merit.

2.

Next, Seymour argues that the State presented insufficient evidence to support his habitual offender adjudication. When reviewing a claim of insufficient evidence, we do not reweigh the evidence. *Ramsey v. State,* 853 N.E.2d 491 (Ind. Ct. App. 2006), *trans. denied.* Rather, we look to the evidence most favorable to the judgment along with all reasonable inferences drawn therefrom. *Id.* We will affirm a judgment if it is supported by substantial evidence of probative value. *Id.*

Pursuant to I.C. § 35-50-2-8(a), a person is a habitual offender if the finder of fact determines the State has proven beyond a reasonable doubt that the defendant has

6

accumulated two prior unrelated felony convictions. A person has accumulated two prior unrelated felony convictions only if the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction, and the offense for which the State seeks to have the person sentenced as a habitual offender was committed after sentencing for the second prior unrelated felony conviction. I.C § 35-50-2-8(c). Failure to prove that the second felony was unrelated to the first felony in that it was committed subsequent to the date of the sentencing for the first requires that the habitual offender determination be vacated. *McManomy v. State*, 751 N.E.2d 291 (Ind. Ct. App. 2001).

To establish the dates on which the predicate offenses were committed, the State presented two Officer Arrest Reports. The first report indicated that Seymour committed class C felony carrying a handgun without a license on September 17, 2002. Seymour was sentenced for this offense on November 21, 2002. The second Officer Arrest Report indicated that Seymour was arrested on an undisclosed warrant charge and on a charge of resisting arrest on February 28, 2010; however, the report does not specify the date on which the resisting offense took place or any of the other facts surrounding the offense.[4] Seymour was sentenced for Class D felony resisting law enforcement on April 1, 2010.

---

[4] During its presentation of evidence and closing argument on the habitual offender allegation, the State claimed that the resisting offense took place on December 12, 2009. The State also prepared and entered into evidence a demonstrative exhibit in the form of a timeline in which it listed the date of the offense as December 12, 2009. Although the evidentiary basis for these assertions is unclear, it appears that the State may have extrapolated this date from the cause number for the resisting offense, which indicates that the cause was filed in December of 2009. In any event, the date of filing is not necessarily the same as date of the offense. Moreover, "[i]t is axiomatic that the arguments of counsel are not evidence." *Blunt-Keene v. State*, 708 N.E.2d 17, 19 (Ind. 1999). On appeal, the State has abandoned its argument that the offense took place on December 12, 2009, and instead argues that it must have occurred on February 28, 2010, the date of Seymour's arrest on the resisting charge. Thus, the State implicitly concedes that the evidence does not establish that the offense took place on December 12, 2009.

Seymour argues that the State failed to prove the date on which the resisting offense occurred and, consequently, failed to establish that the offense was committed subsequent to the date of sentencing for his carrying a handgun without a license conviction. The State, however, argues that the jury could reasonably infer that the offense took place on the date of the arrest. Specifically, the State argues that "[a] jury could reasonably infer that [Seymour] resisted [the officer's] attempt to arrest him on the warrant charge on February 28, 2010, and that [Seymour's] resistance constituted the resisting law enforcement charge for which he was convicted." *Appellee's Brief* at 7. The State argues further that the jury could reasonably infer that the officer left the offense date line on the Officer Arrest Report blank because the offense occurred on the same day as the arrest.

While it is certainly possible that the resisting offense took place on the same date as the arrest, the State presented no evidence to support such a conclusion. Indeed, the State presented no evidence whatsoever concerning the facts and circumstances of the offense. Given the complete dearth of evidence in this regard, an inference that the offense took place on the date of the arrest would be too speculative to constitute proof beyond a reasonable doubt. Likewise, the passage of time between the first and second convictions is insufficient to support an inference that they were unrelated for the purposes of the habitual offender statute. *See McCovens v. State*, 539 N.E.2d 26 (Ind. 1989) (insufficient evidence of required sequence where prior felony convictions spanned nearly twenty years); *McManomy v. State*, 751 N.E.2d 291 (insufficient evidence of required sequence where convictions spanned approximately two years).

Accordingly, we conclude that the State presented insufficient evidence to support the habitual offender determination. We therefore reverse Seymour's habitual offender adjudication and remand with instructions to vacate the thirty-year sentence enhancement imposed thereon. We note, however, that "the Double Jeopardy Clause does not prevent the State from re-prosecuting a habitual offender enhancement after conviction therefore has been reversed on appeal for insufficient evidence." *Jaramillo v. State*, 823 N.E.2d 1187, 1191 (Ind. 2005).

Judgment affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and BRADFORD, J., concur.