# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 15 2019, 10:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Peter C. Soldato
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Ryan T. Baxter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 15, 2019

Court of Appeals Case No.
18A-CR-3019

Appeal from the Elkhart Superior Court

The Honorable Kristine Osterday, Judge

Trial Court Cause No.
20D01-1605-F1-4

**Pyle, Judge.**

# Statement of the Case

Ryan Baxter ("Baxter") appeals, following a jury trial, his convictions of Level 1 felony rape[1] and Level 6 felony strangulation.[2]  Baxter argues that:  (1) the trial court abused its discretion in its rulings on the admission and exclusion of evidence; and (2) the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error.  Concluding that the trial court did not abuse its discretion and that Baxter has failed to show fundamental error, we affirm Baxter's convictions.

We affirm.

# Issues

1. Whether the trial court abused its discretion in its admission and exclusion of evidence.

2. Whether the prosecutor's statements during closing argument amounted to fundamental error.

# Facts

In August 2015, Baxter contacted, via Facebook Messenger, fellow high school alum, J.W. ("J.W."), after J.W. had made a Facebook post regarding her breakup with her longtime boyfriend.[3]  J.W. knew that Baxter had been in a

---

[1] IND. CODE § 35-42-4-1.

[2] I.C. § 35-42-2-9.

[3] J.W. graduated from high school in 2012, and Baxter graduated in 2014.

long-term, on-and-off relationship, and she sought his advice about how to "fix" her relationship with her boyfriend. (Tr. Vol. 2 at 105). Baxter and J.W. began communicating via Snapchat and text. On August 9, 2015, Baxter asked J.W. if he could come to her apartment the following day immediately after his work shift so they could talk. J.W., who thought that Baxter was being "supportive" and "seemed like he wanted to help" her, agreed. (Tr. Vol. 2 at 106).

[4] During the afternoon of August 10, 2015, Baxter went to J.W.'s apartment. When Baxter arrived, J.W. introduced him to her teenage son ("J.W.'s son").[4] Prior to arriving at the house, Baxter had asked J.W. if he could take a shower since he was coming straight from work. When in the bathroom, Baxter asked J.W. for help with turning on the shower. J.W. had had problems with her shower handle getting stuck, so she went into the bathroom to assist Baxter with the handle. As she was trying to turn the handle, Baxter put his hand under J.W.'s shirt and asked her if she wanted to shower with him. J.W. told him "no," that she "didn't want to take a shower with him[,]" and that she "wasn't having sex with him." (Tr. Vol. 2 at 109). J.W. left the bathroom, went into the living room, and told her son what had happened.

[5] After Baxter finished his shower, he walked into the living room, sat next to J.W. on the couch, put his arm around her, and touched her thigh. J.W. got up

---

[4] In August 2015, J.W. had a guardianship over her son and later adopted him.

and moved to the other side of the couch, and Baxter "scooted" toward her. (Tr. Vol. 2 at 113). When J.W.'s son left the apartment, Baxter started "kissing on" J.W. and tried to kiss her on her lips. (Tr. Vol. 2 at 115). J.W. told Baxter to "stop" and informed him that she did not want to have sex with him. (Tr. Vol. 2 at 115). Disregarding J.W.'s comments, Baxter pulled down his pants, grabbed J.W. by her hair, and tried to force her to perform oral sex on him. Again, J.W. told him, "No" and "Stop." (Tr. Vol. 2 at 116). When Baxter let go of J.W.'s hair, she ran for the door. Baxter grabbed J.W. from behind in a "bear hug[,]" "squeezed [her] so tight that [she] thought he might have broke[n] [her] ribcage[,]" and threw her on the couch. (Tr. Vol. 2 at 119). Baxter then put one hand around J.W.'s throat and choked her and used the other hand to pull off her pants and underwear. He forced her legs apart, "ripped [her] tampon out[,]" and "inserted" his penis into her vagina. (Tr. Vol. 2 at 116). Baxter repeatedly asked J.W., "Do you like that, baby?" (Tr. Vol. 2 at 116, 122). J.W. was unable to breathe, speak, or yell as Baxter choked her. At some point during the ordeal, J.W.'s cell phone on the coffee table rang. When she tried to reach for the phone, Baxter "choked [her] harder and [she] almost blacked out." (Tr. Vol. 2 at 116). Once Baxter was "done," he wiped himself off with a towel, got dressed, told J.W. that he would talk to her later, and then left her apartment. (Tr. Vol. 2 at 116).

[6]     J.W., then able to breathe, ran to her bathroom and vomited. That same day, J.W. told a friend what had happened and then went to the hospital. A nurse, Kathleen Turco ("Nurse Turco") performed a sexual assault examination and

contacted the police. After receiving treatment at the hospital, J.W. went to the police station and gave a statement to Officer Bryan Wodtkey ("Officer Wodtkey") regarding Baxter's offenses against her. While interviewing J.W., Officer Wodtkey noted that she was crying and "visibly upset." (Tr. Vol. 2 at 68). After J.W.'s interview, the police went to her apartment, collected evidence, and took photographs.

[7] The State charged Baxter with Level 1 felony rape and Level 6 felony strangulation. Baxter's counsel took J.W.'s deposition prior to the scheduled jury trial in this case. During the deposition, Baxter's counsel asked J.W. if she had ever filed a police report against someone for a similar situation as her accusations against Baxter, and she stated that she had in 2011. Thereafter, Baxter's counsel obtained the police investigation report regarding the 2011 allegation.

[8] The trial court held a three-day jury trial in August 2018. Before the presentation of evidence, Baxter asked the trial court to rule on whether Baxter would be allowed to present evidence, under an exception to Evidence Rule 412, regarding J.W.'s prior rape accusation. Specifically, Baxter argued that J.W.'s accusation from 2011 should be admissible because it was demonstrably false. In support of his argument, Baxter presented the trial court with: (1) a copy of the police investigation report; and (2) a two-page excerpt from J.W.'s deposition. Baxter used the tendered documents as his offer of proof. Baxter did not present any witness testimony to support his argument. The trial court reviewed the documentary evidence and relevant caselaw and concluded that

there was "nothing in . . . the information that[] [had] been tendered to the Court – that lead[] [the court] to believe that the allegation was demonstrably false." (Tr. Vol. 2 at 50).

[9] During the trial, J.W. testified regarding the offenses against her as set forth in the facts above. During Nurse Turco's testimony, the State offered into evidence State's Exhibit 11, the medical record from J.W.'s sexual assault exam and hospital treatment. Baxter objected to the admission of the exhibit, arguing that J.W.'s statements within the medical records were hearsay and were cumulative of J.W.'s trial testimony regarding the alleged offenses.[5] The State argued that the medical records were admissible under Evidence Rule 803(4), the medical diagnosis or treatment exception to hearsay. The trial court overruled Baxter's objections and admitted State's Exhibit 11 into evidence.

[10] Thereafter, the State asked Nurse Turco what J.W. had told her during the examination. Baxter, believing that the State was going to have the nurse read verbatim a portion of the medical record into evidence, objected to the potential testimony as cumulative. The State clarified that it did not intend to have the nurse read the report but to merely summarize what J.W. had reported to her. Nurse Turco then testified, in a summary fashion, about the information that

---

[5] Baxter also objected, based on hearsay and the Confrontation Clause, to the admission of the medical scans and reports from the radiologist and doctor contained in State's Exhibit 11. On appeal, he does not challenge the trial court's evidentiary ruling on this objection.

J.W. had conveyed regarding the offenses against her. Baxter did not object to this testimony.

[11] Baxter testified on his own behalf. He denied that he had touched J.W. when she was helping him with the shower handle. He testified that, after he had finished his shower, he sat next to J.W. on the couch, put his arm around her, and tickled her. Baxter denied that J.W. moved away from him when they were on the couch. He testified that they kissed while sitting on the couch and that J.W. put "her hands all over [his] body[,]" including touching his penis. (Tr. Vol. 3 at 27). Baxter testified that he had consensual sex with J.W. and that she never told him to stop. Additionally, he testified that he placed one of his hands around the front of J.W.'s neck with a "firm grasp" when they were having sex, but he denied that he had strangled her. (Tr. Vol. 3 at 31). Baxter testified that he "assumed she liked it" because she pulled him closer and did not push his hand away. (Tr. Vol. 3 at 32).

[12] During closing arguments, Baxter's counsel told the jury that Baxter did not have the burden of proof and that he did not have to testify. Counsel then argued that Baxter, nevertheless, testified to tell the jury "the good, the bad[,] and the ugly" and to explain "how it happened" and what he had done. (Tr. Vol. 3 at 69). Baxter's counsel also argued that the police investigation was inferior, including Officer Wodtkey's failure to look at J.W.'s cell phone. Specifically, counsel argued that Officer Wodtkey should have asked J.W. to see her cell phone so that he could corroborate her statement that her phone rang when Baxter was choking her. Additionally, during Baxter's closing

argument, his counsel directed the jury's attention to State's Exhibit 11, the medical records, and encouraged the jury to "please, inspect them at [its] leisure." (Tr. Vol. 3 at 79). Thereafter, Baxter's counsel discussed in detail various portions of the medical records.

[13] During the State's rebuttal argument, the prosecutor responded to Baxter's arguments regarding the officer's failure to look at J.W.'s cell phone to corroborate her statement and regarding the fact that Baxter had decided to testify at trial. First, in regard to J.W.'s phone, the prosecutor noted that Baxter's counsel had "brought up the fact that there's no phone records to prove that [J.W.] got this phone call or to corroborate [J.W.'s] story" and then stated that "the defense has the third[-]party power to subpoena[.]" (Tr. Vol. 3 at 86). Baxter objected, arguing that the State had improperly shifted the burden of proof to him. Upon Baxter's request, the trial court admonished the jury. Specifically, the trial court admonished the jury as follows: "I will admonish you that under the laws of the state of Indiana, there is no burden on behalf of the Defendant to prove or explain anything." (Tr. Vol. 3 at 88). Baxter did not move for a mistrial.

[14] Thereafter, when responding to Baxter's argument about his decision to testify, the prosecutor stated:

> [Baxter's counsel] is absolutely correct, he doesn't have to take the stand. Constitutionally he has a right not to do that. But the State submits to you that he did have to take the stand after the State's case in chief to convince you all that this was somehow consensual because the evidence in the State case in chief was so

overwhelming, that testimony from [J.W.] was so overwhelming that he had to get up there and tell this[.]"

(Tr. Vol. 3 at 91). Baxter made "the same objection" and asked the trial court to again admonish the jury. (Tr. Vol. 3 at 92). The trial court then admonished the jury, in relevant part, as follows:

> . . . I will again admonish you that the Defendant has protections afforded to him under the Constitution of the United States and the Indiana Constitution that does not require him to testify and so I believe with specifically with the comment that he has to tell you or he has to testify, under those constitutions is, in fact, not true.

(Tr. Vol. 3 at 93). Baxter did not move for a mistrial.

[15] In its final instructions to the jury, the trial court instructed the jury, in relevant part, that the "State ha[d] the burden of proving [Baxter] guilty beyond a reasonable doubt" and that Baxter was "presumed to be innocent," was "not required to present any evidence to prove his innocence, or to prove or explain anything." (Tr. Vol. 3 at 98, 99). The jury found Baxter guilty as charged. The trial court imposed a thirty (30) year sentence with (5) years suspended to probation, for Baxter's Level 1 felony rape conviction and a one (1) year sentence for his Level 6 felony strangulation conviction, and the court ordered that these sentences be served concurrently. Baxter now appeals.

# Decision

Baxter argues that: (1) the trial court abused its discretion in its rulings on the admission and exclusion of evidence; and (2) the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error. We will review each argument in turn.

## 1. Evidentiary Rulings

We first address Baxter's argument that the trial court abused its discretion in some of its evidentiary rulings. Specifically, Baxter contends that the trial court abused its discretion by excluding evidence of J.W.'s 2011 rape accusation and by admitting State's Exhibit 11, the medical records.

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

Turning to Baxter's argument regarding the exclusion of J.W.'s prior rape accusation, we note that the admission of evidence relating to a victim's past sexual conduct is governed by Indiana Evidence Rule 412, which is commonly referred to as the Rape Shield Rule. *Candler v. State*, 837 N.E.2d 1100, 1103 (Ind. Ct. App. 2005), *reh'g denied*. The purpose of Evidence Rule 412 is "to prevent the victim from being put on trial, to protect the victim against surprise,

harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes." *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999). Evidence Rule 412 generally prohibits the admission of evidence regarding the past sexual conduct of a victim or witness. *See* Evid. R. 412. Rule 412, however, contains enumerated exceptions applicable in criminal cases—none of which are relevant or at issue in this appeal—that permit a trial court to admit certain evidence regarding a victim's sexual behavior. *See* Evid. R. 412(b)(1). Additionally, a common law exception to Evidence Rule 412 exists for evidence that a victim has made "prior false accusations of rape[.]" *Walton*, 715 N.E.2d at 826.[6] "This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that his or her prior accusation of rape is false[;] or (2) the victim's prior accusation is demonstrably false." *Candler*, 837 N.E.2d at 1103. "Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved." *Id.* "As a general rule, when the admission of evidence is predicated on a factual determination by the trial court, we review under a clearly erroneous standard of review." *Id.*

[20] Here, where J.W. never stated that the 2011 rape accusation was false, Baxter was required to prove that her prior accusation was demonstrably false. For his

---

[6] The *Walton* Court explained that "[e]vidence of prior false accusations of rape made by a complaining witness d[id] not constitute 'prior sexual conduct' for rape shield purposes" of Evidence Rule 412 because "such evidence [wa]s more properly understood as verbal conduct, not sexual conduct." *Walton*, 715 N.E.2d at 826.

offer of proof, Baxter presented the trial court with: (1) a copy of the 2011 police investigation report; and (2) a two-page excerpt from J.W.'s deposition in this case. In her deposition, J.W. discussed the prior rape accusation and confirmed that she had never recanted the veracity of the accusation. The 2011 police report contained a document, which set forth the false informing statute and contained J.W.'s signature, by which she declared that she had read and understood the statute and acknowledged that she would be prosecuted if she violated the statute by reporting her rape allegation. The police report also included some text messages between J.W. and the accused. Baxter argued below, and argues on appeal, that the text messages were sexual in nature and showed the falsity of J.W.'s accusation. The trial court reviewed the tendered documentary evidence and relevant caselaw and concluded that there was "nothing in . . . the information that[] [had] been tendered to the Court – that lead[] [the court] to believe that the allegation was demonstrably false." (Tr. Vol. 2 at 50). Because J.W. did not recant her accusation and Baxter failed to show that the accusation was demonstrably false, the trial court properly excluded the proffered evidence. *See, e.g.*, *Candler*, 837 N.E.2d at 1103 (affirming the trial court's ruling, under Evidence Rule 412, excluding evidence based on its factual determination that the victim had not admitted the falsity of the charges and that the charges were not demonstrably false). Accordingly, we affirm the trial court's evidentiary ruling on this issue.

[21] Next, we turn to Baxter's admission of evidence argument in which he asserts that the trial court abused its discretion by admitting State's Exhibit 11, the

medical records. Specifically, he challenges J.W.'s statements, which were made to and recorded by the nurse, regarding how Baxter had raped and strangled J.W. At trial, Baxter objected to this evidence, arguing that it was hearsay and was cumulative of J.W.'s trial testimony. The trial court admitted the evidence under the hearsay exception contained in Evidence Rule 803(4), statements made for the purpose of medical diagnosis and treatment. On appeal, Baxter challenges that ruling.

[22] Indiana Evidence Rule 803(4) permits statements made for the purpose of medical diagnosis and treatment to be admitted into evidence, even when the declarant is unavailable as a witness. Evid. R. 803(4). Evidence Rule 803(4) requires that any such statement: "(A) is made by a person seeking medical diagnosis or treatment; (B) is made for -- and is reasonably pertinent to -- medical diagnosis or treatment; and (C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause." *Id.* (format altered). This hearsay exception is "grounded in a belief that the declarant's self-interest in obtaining the proper medical treatment makes such a statement reliable enough for admission at trial[.]" *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). "[M]ore simply put, Rule 803(4) reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well." *Id.*

[23] When determining whether a statement was properly admitted pursuant to Rule 803(4), the following two-step analysis is required: (1) whether the declarant is motivated to provide truthful information in order to promote

diagnosis and treatment; and (2) whether the content of the statement is such that an expert in the field would reasonably rely upon it in rendering diagnosis or treatment. *Id.* To satisfy the first prong, the requirement of showing the declarant's motivation, the "'declarant must subjectively believe that he [or she] was making the statement for the purpose of receiving medical diagnosis or treatment.'" *Id.* (quoting *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996)). "With most declarants, this is generally a simple matter[.]" *Id.* "[F]or example where a patient consults with a physician, the declarant's desire to seek and receive treatment may be inferred from the circumstances." *Id.* at 261. As for the second prong, "[s]tatements made by victims of sexual assault . . . about the nature of the assault or abuse—even those identifying the perpetrator— generally satisfy the second prong of the analysis because they assist medical providers in recommending potential treatment for sexually transmitted disease, pregnancy testing, psychological counseling, and discharge instructions." *Id.* at 260 (citing *Palilonis v. State,* 970 N.E.2d 713, 726-27 (Ind. Ct. App. 2012), *trans. denied*).

[24] Baxter challenges the trial court's evidentiary ruling based only the first prong of this Rule 803(4) analysis. We need not, however, determine whether the trial court abused its discretion by admitting the medical records containing J.W.'s statements into evidence because, even if it was erroneous to admit the evidence, any error was harmless. "[E]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *McClain*, 675 N.E.2d at 331 (citing Ind. Trial Rule 61). When

determining whether any error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the evidence upon the jury. *Id.* The "[a]dmission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." Id. at 331-32.

[25] Here, J.W. testified at trial and was subject to cross-examination regarding her allegations that Baxter had raped and strangled her. J.W.'s statements concerning these same allegations as contained in the medical records merely repeated her statements made on the stand. Indeed, at trial, Baxter acknowledged that J.W.'s statements in the medical report were merely cumulative of her trial testimony. Specifically, Baxter objected to the admission of the medical report as "cumulative" because J.W. had "already testified with respect to . . . what she reported" to the nurse. (Tr. Vol. 2 at 214). Moreover, Nurse Turco testified as to what J.W. had reported to her during the exam. Additionally, during closing argument, Baxter's counsel directed the jury's attention to State's Exhibit 11, the medical records, and encouraged the jury to "please, inspect them at [its] leisure." (Tr. Vol. 3 at 79). Thereafter, Baxter's counsel discussed in detail various portions of the medical records. Because J.W.'s statements contained in the medical records were cumulative of her trial testimony and because Baxter has not shown that his substantial rights were affected, any potential error in the admission of the medical records was harmless error. *See, e.g.*, *McClain*, 675 N.E.2d at 331 (concluding that any error

in the admission of evidence under Evidence Rule 803(4) was harmless where the challenged evidence was merely cumulative of the victim's trial testimony).[7]

## 2. Prosecutorial Misconduct

Baxter contends that the prosecutor committed two instances of prosecutorial misconduct. Baxter argues that the prosecutor's two comments made during the State's rebuttal argument suggested that he had the burden of proof or the burden to produce evidence. Baxter acknowledges that he has procedurally defaulted his claim of prosecutorial misconduct by failing to seek a mistrial after the two comments and that he, therefore, must show fundamental error.

To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, a defendant must establish the grounds for the prosecutorial misconduct, and he must also establish that the prosecutorial misconduct resulted in fundamental error. *Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014), *reh'g denied*. When reviewing a claim of prosecutorial misconduct, our Court determines: (1) whether misconduct occurred, and if so; (2) whether the

---

[7] Moreover, our review of the record shows that the generally "simple matter" of showing that the declarant was motivated to provide truthful information in order to promote diagnosis and treatment (as required by the first prong of the Evidence Rule 803(4) analysis) can be inferred from the circumstances where J.W. went to the hospital, consulted with and was examined by a nurse and doctor, had medical tests done, and received treatment. *See VanPatten*, 986 N.E.2d at 261. Additionally, when the prosecutor questioned J.W. about going to the hospital, she affirmed that she gave information to the nurse with the "idea or knowledge that [she] w[as] providing some information so that [she] could get some treatment[.]" (Tr. Vol. 2 at 126-27). Because J.W.'s statements in the medical record were made in the course of medical diagnosis and treatment, the trial court did not abuse its discretion by admitting State's Exhibit 11 into evidence. *See, e.g.*, *Palilonis*, 970 N.E.2d at 727 (holding that a victim's hearsay statements that described a rape and were made to hospital personnel during her sexual assault examination where statements were made in the course of medical treatment and admissible under the hearsay exception of Rule 803(4)).

misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been otherwise subjected. *Id.* at 667.

[28]     For a claim of prosecutorial misconduct to rise to the level of fundamental error, a defendant "faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Id.* at 668 (internal quotation marks omitted). Thus, the defendant "must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm." *Id.* (internal quotation marks omitted). The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id.* "In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible." *Id.* (emphasis in original).

[29]     Here, Baxter objected to two arguments made by the prosecutor during the State's rebuttal argument. The prosecutor's arguments were in response to Baxter's arguments regarding the officer's failure to look at J.W.'s phone to corroborate her statement and the fact that Baxter had decided to testify at trial. When objecting to the State's two rebuttal arguments, Baxter argued that the

State had improperly shifted the burden of proof to him. Baxter requested the trial court to admonish the jury, but he did not request a mistrial. The trial court admonished the jury that Baxter did not have the burden to prove anything and that he was not required to testify. In its jury instructions, the trial court informed the jury that the State, not Baxter had the burden of proof. The trial court also instructed the jury that Baxter was presumed innocent and that he was not required to present evidence or to prove or explain anything.

[30] We acknowledge that "[i]t is improper for a prosecutor to suggest that a defendant shoulders the burden of proof in a criminal case." *Stephenson v. State*, 742 N.E.2d 463, 483 (Ind. 2001), *cert. denied*. We, however, need not determine whether the prosecutor's two statements were improper or amounted to misconduct because Baxter has not established fundamental error. *See Ryan*, 9 N.E.3d at 667-68 (explaining that to prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, a defendant must establish the grounds for the prosecutorial misconduct *and* that the prosecutorial misconduct resulted in fundamental error). Even if the statements amounted to misconduct, any such error did not amount to fundamental error where the trial court admonished the jury and instructed the jury that Baxter was not required to prove his innocence or present any evidence at trial. Under the circumstances of this case, we cannot conclude that the prosecutor's statements rose to the level of fundamental error. *See e.g.*, *Ryan*, 9 N.E.3d at 672-73 (concluding that there was no fundamental error resulting from prosecutorial misconduct where the jury was properly instructed); *Reliford*

*v. State*, 436 N.E.2d 313, 315 (Ind. 1982) (holding that the trial court "cured" any improper statement by the prosecutor when it instructed the jury that "the defendant was not required to present any evidence whatsoever and was not required to prove or disprove his innocence");

*Ramsey v. State*, 853 N.E.2d 491, 501-02 (Ind. Ct. App. 2006) (explaining that any alleged misconduct from the prosecutor's statements was cured by the trial court's instructions to the jury regarding the burden of proof and the fact that the defendant was not required to present any evidence), *trans. denied*.

[31]　Affirmed.

Riley, J., and Bailey, J., concur.